UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SHARESE TAMBURINO,

    Plaintiff,

                  3:11-cv-00521 -ST

  v.

                  OPINION AND ORDER

OLD DOMINION FREIGHT LINES, INC., a
Virginia corporation,

    Defendant.

STEWART, Magistrate Judge:

On March 1, 2011, plaintiff, Sharese Tamburino ("Tamburino"), filed a Complaint in state court against her former employer, Old Dominion Freight Lines ("Old Dominion"), a Virginia corporation, alleging two claims that Old Dominion retaliated against her for filing a workers' compensation claim in violation of ORS 659A.040 and refused to reinstate her in violation of ORS 659A.043. Old Dominion timely removed the case to this court on May 13, 2011.

This court has diversity jurisdiction under 42 USC § 1332 since this case involves a controversy between citizens of different states and the amount in controversy exceeds $75,000. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

On December 14, 2011, Tamburino filed her First Amended Complaint, adding a Third Claim alleging that Old Dominion violated ORS 659A.133 by misusing her post-offer medical questionnaire to terminate her employment.  Old Dominion has filed a Motion to Dismiss the Third Claim (docket # 22).  For the reasons set forth below, that motion is granted as to two allegations in paragraph 17 of the Third Claim and otherwise denied.

## STANDARDS

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief [.]"  FRCP 8(a)(2).  This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 129 S Ct 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*

In order to survive a motion to dismiss under FRCP 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*, quoting *Twombly*, 550 US at 570.  When reviewing a motion to dismiss, this court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F3d 1068, 1072 (9th Cir 2005), citing *Cervantes v. United States*, 330 F3d 1186, 1187 (9th Cir 2003).

## ALLEGATIONS

Old Dominion hired Tamburino on June 25, 2007, as a commercial truck driver.  First Amended Complaint, ¶ 3.  One of her job duties was handling freight, including loading and unloading.  *Id*.  She was required to maintain a Department of Transportation medical certification that she was fit to perform her job duties.  *Id*.

In connection with her hiring, Tamburino completed a medical questionnaire about her previous medical and health history. *Id*, ¶¶ 5, 16. She "made her best efforts under the circumstances to truthfully complete the questionnaire" and did so "to the best of her ability." *Id*. Though Tamburino had a childhood diagnosis of scoliosis and learned several years earlier that she had early signs of carpal tunnel syndrome, she did not reveal either condition on the questionnaire. *Id*, ¶ 4.

During the last six months of her employment, Tamburino developed significant pain and numbness in both of her arms and hands. *Id*. On December 31, 2009, she filed a workers' compensation claim. *Id*. During the processing of that claim, Old Dominion learned of Tamburino's history of scoliosis and carpal tunnel syndrome. *Id*. Her claim was accepted for bilateral carpal tunnel syndrome on March 1, 2010. *Id*. However, on March 3, 2010, Old Dominion terminated her employment for allegedly falsifying the post-job offer medical questionnaire. *Id,* ¶ 5.

The First Claim alleges that Old Dominion violated ORS 659A.040 because Tamburino's workers' compensation claim was a substantial factor in its termination decision. *Id,* ¶ 7. To the extent that Old Dominion had a policy of terminating employees for providing inaccurate medical information, Tamburino alleges that the policy has a disparate impact on employees who utilize the workers' compensation system. *Id*. The First Claim also alleges that Old Dominion retaliated against Tamburino in violation of ORS 659A.040 by interfering with, and causing a denial of, her workers' compensation benefits. *Id*, ¶ 8. It did so by telling the workers' compensation insurer that it terminated Tamburino for cause and would have provided her with modified work had she not been terminated. *Id*.

The Second Claim alleges that after her doctor released her to regular work without restrictions on or about August 25, 2010, Tamburino requested reinstatement to her former position which Old Dominion denied.  *Id*, ¶ 12.  By refusing to reinstate her, Tamburino alleges that Old Dominion violated ORS 659A.043.  *Id*.

The new Third Claim alleges that after Tamburino filed her workers' compensation claim, Old Dominion's Workers' Compensation Manager, Katrena Parker, reviewed her post-job offer medical questionnaire and compared it to the medical information she provided to a physician in the course of her workers' compensation claim.  *Id*, ¶ 18.  Parker then provided the questionnaire to Brian Stoddard, Old Dominion's Vice President of Safety and Personnel, who made the decision to terminate Tamburino for allegedly providing false information on the questionnaire.  *Id*.  As a result, Tamburino alleges that Old Dominion violated ORS 659A.133 by misusing the confidential information in her post-job offer medical questionnaire.

## DISCUSSION

## I.  Timeliness of Third Claim

Old Dominion first argues that the Third Claim should be dismissed as barred by the statute of limitations.  A civil action for an unlawful employment practice under ORS 659A.133 "must be commenced within one year after the occurrence of the unlawful employment practice unless a complaint has been timely filed under ORS 659A.820."  ORS 659A.875 (incorporating ORS 659A.885 by reference).

Tamburino did not file a complaint with the Oregon Commissioner of the Bureau of Labor and Industries ("BOLI").  Therefore, she must bring her claim under ORS 659A.133 within one year after Old Dominion's alleged violations.  Those violations occurred on or around her termination on March 3, 2010.  Her original complaint was filed on March 1, 2011, within

one year of her termination. However, she added her Third Claim in her First Amended

Complaint which was filed on December 14, 2011, at least one year and nine months after her

termination. Thus, the Third Claim is time-barred unless it relates back to the filing of the

Complaint.

An amendment "relates back to the original pleading" when it "asserts a claim or defense

that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in

the original pleading." FRCP 15(c)(1)(B). "Claims arise out of the same conduct, transaction, or

occurrence if they 'share a common core of operative facts' such that the plaintiff will rely on the

same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F3d 1120, 1133 (9th Cir 2008)

(citations omitted). "The court compares the original complaint with the amended complaint and

decides whether the claim to be added will likely be proved by 'the same kind of evidence'

offered in support of the original pleading." *Percy v. San Francisco Gen'l Hosp.*, 841 F2d 975,

978 (9th Cir 1988) (citations omitted).

> [A]mendment of a complaint is proper if the original pleading put the
> defendant on notice of the "particular transaction or set of facts" that the
> plaintiff believes to have caused the complained of injury. Fairness to the
> defendant demands that the defendant be able to anticipate claims that
> might follow from the facts alleged by the plaintiff.

*Id* at 979 (citations omitted).

When an amended complaint "ha[s] to include additional facts to support the [new]

claim," it does not relate back. *See Williams*, 517 F3d at 1133.

The Third Claim alleges that Old Dominion's employees, Parker and Stoddard,

unlawfully stored, reviewed, and used her post-job offer questionnaire. That new claim is

supported by approximately 11 new factual allegations regarding the questionnaire, including its

purpose, how it was maintained, who reviewed it, how it was used for employee discipline, and

how it was compared to her medical records obtained through her workers' compensation claim administration. First Amended Complaint, ¶¶ 4, 5, 16-18. Therefore, Old Dominion argues that it does not relate back to the Complaint.

The First and Second Claims allege that Old Dominion retaliated against Tamburino for filing a workers' compensation claim by first terminating her and then refusing to reinstate her. Though the Third Claim offers a new legal theory, the alleged falsification of the questionnaire is alleged in paragraph 5 as the cause of Tamburino's termination. Paragraph 5 is incorporated in, and key to, all three claims. In addition, paragraph 7 in the First Claim specifically refers to Old Dominion's unlawful policy of terminating employees who provide inaccurate information on post-job offer medical questionnaires as having a disparate impact on employees who file workers' compensation claims. Thus, the common core of operative facts in the First Claim, as in the Third Claim, is the allegedly improper use of the medical questionnaire to terminate Tamburino. Both claims involve the same injury (termination), the same actors (Parker and Stoddard), the same policy (termination of employees who falsify questionnaires), and the same evidence (use of the questionnaire).

The cases cited by Old Dominion are distinguishable. In *Percy*, the plaintiff sued for Title VII discrimination and later sought to add a § 1983 claim based on an injury suffered after and independent of the events at issue in the original Title VII claim. 841 F3d at 978. Tamburino, in contrast, alleges that the use of the questionnaire is central to both her First Claim for retaliation and her Third Claim for improper use of medical records. In *Williams*, plaintiffs attempted to add a claim of compensation discrimination to their existing claims for promotion discrimination, hostile work environment, and retaliation claims. The court noted that "different statistical evidence and witnesses would be used to prove the compensation and promotion

discrimination claims because of the different processes Boeing uses to make salary and

promotion decisions." 517 F3d at 1133. It concluded that "[t]he compensation discrimination

claim is a new legal theory depending on different facts, not a new legal theory depending on the

same facts." *Id.* Here, in contrast, the Third Claim is based largely on the same facts. While

there may be some new facts alleged and potentially some new witnesses, it still relates to the

same occurrence, namely Tamburino's termination after Old Dominion's managers reviewed

confidential information in her post-job offer questionnaire. Therefore, this court concludes that

the Third Claim relates back to the original Complaint and is timely filed.

## II. <u>Insufficient Allegations</u>

Old Dominion argues that even if the Third Claim is timely, it should be dismissed for

failing to state a claim under FRCP 12(b)(6). The Third Claim alleges that Old Dominion

violated ORS 659A.133 through its practices and policies because it: (1) "failed to maintain the

confidential questionnaires separate from other non-confidential personnel information;"

(2) "utilized the confidential questionnaires for workers' compensation claims administration";

(3) "provided the confidential questionnaires to persons not authorized by law to review them";

and (4) "utilized the confidential questionnaires as a basis for employee discipline." First

Amended Complaint, ¶ 17. The next paragraph explains how Old Dominion utilized those

policies and practices against Tamburino by reviewing and using her confidential questionnaire

after she filed her workers' compensation claim. *Id*, ¶ 18. Parker was able to review the

questionnaire because it "was not maintained in accordance with ORS 659A.133" and did so "for

claims management purposes and was not authorized by ORS 659A.133." *Id.* Parker then

provided that information to Stoddard who misused it to terminate her for allegedly providing

false information in violation of ORS 659A.133. *Id.*

The statute at issue, ORS 659A.133 provides as follows:

> **Medical examinations and inquiries of job applicants.** (1) Except as provided in this section, an employer violates ORS 659A.112 if the employer conducts a medical examination of a job applicant, makes inquiries of a job applicant as to whether the applicant has a disability or makes inquiries as to the nature or severity of any disability of the applicant.
>
> (2) An employer may make inquiries into the ability of a job applicant to perform job-related functions.
>
> (3) An employer may require a medical examination after an offer of employment has been made to a job applicant and before the commencement of the employment duties of the applicant, and condition the employment on the results of the examination, if the following conditions are met:
>
>   (a) All individuals entering the employ of the employer must be subject to the examination regardless of disability.
>
>   (b) Information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential medical record, except as follows:
>
>     (A) Supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations.
>
>     (B) First aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment.
>
>     (C) Officers and employees of the Bureau of Labor and Industries investigating compliance with ORS 659A.112 to 659A.139 shall be provided relevant information on request.
>
>   (c) The results of an examination authorized under this subsection may only be used in the manner provided for in ORS 659A.112 to 659A.139.

Old Dominion contends that a plain reading of this statute forecloses the Third Claim.

**A. Applicability to Non-Disabled Persons**

The language of ORS 659A.133 raises a threshold question as to whether it applies only to disabled job applicants. If so, then Tamburino does not state a claim for violation of this statute because she does not allege that she is disabled.

The first sentence of the first subsection of ORS 659A.133 states that "[e]xcept as provided in this section, an employer violates ORS 659A.112 if the employer conducts a medical

examination of a job applicant" or otherwise inquires about an applicant's disability.   The

referenced statute, ORS 659A.112, makes it "an unlawful employment practice for any employer

to . . . discharge from employment . . . on the basis of disability."  To state a claim under that

statute, a person must be "a qualified individual with a disability."  Therefore, by incorporating

the reference to ORS 659A.112, only qualified individuals with a disability have a cause of

action for an employer's discriminatory use of medical examinations and inquiries of job

applicants.

The issue is whether a job applicant who has no disability has "standing" to challenge an

inquiry or medical examination under the remaining two subsections of ORS 659A.133.  The

second subsection allows inquiries about "job-related functions," and the third subsection allows

a post-job offer medical examination only if three conditions are met.  The second subsection is

not at issue here.  Tamburino complains that Old Dominion did not comply with the second and

third conditions of the third subsection (ORS 659A.133(3)(b) and (c)) for such an examination.

No Oregon court has yet interpreted ORS 659A.133.  However, Oregon's disability

discrimination laws, ORS 659A.103-.145, "shall be construed to the extent possible in a manner

that is consistent with any similar provisions of the federal Americans with Disabilities Act of

1990, as amended by the federal ADA Amendments Act of 2008 and as otherwise amended."

ORS 659A.139(1).

Although not identical, the Americans with Disabilities Act ("ADA") has a similar

provision, 42 USC § 12112.   As in ORS 659A.112, subsection (a) of 42 USC § 12112 bars

employment discrimination "against a qualified individual with a disability because of the

disability."   Subsection (d)(1) extends the "prohibition against discrimination as referred to in

subsection (a)" to "medical examinations and inquiries."  Subsections (d)(2) through (d)(4)

provide more detailed guidelines as to what is and is not allowed.  In particular, subsection (d)(3) allows medical examinations of job applicants if three conditions are met.  Those three conditions are nearly identical to the ones listed in ORS 659A.133(3).

Interpreting this ADA provision, four circuits, including the Ninth Circuit, have concluded that a person need not have a disability to "invoke the ADA's protection against improper medical examinations."  *Fredenburg v. Contra Costa Cnty. Dep't of Health Servs.,* 172 F3d 1176, 1181 (9th Cir 1999); *also see Indergard v. Georgia-Pacific Corp.*, 582 F3d 1049, 1952-53 (9th Cir 2009) (holding that 42 USC § 12112(d)(4)(A) regarding the scope of a medical examination "applies to all employees, whether or not they are disabled under the ADA," citing *Fredenburg*); *Harrison v. Benchmark Elec. Huntsville, Inc.,* 593 F3d 1206, 1213-14 (11th Cir 2010); *Conroy v. N.Y. State Dep't of Corr. Servs.,* 333 F3d 88, 94 (2nd Cir 2003); *Cossette v. Minn. Power & Light*, 188 F3d 964,969-70 (8th Cir 1999); *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F3d 1221, 1229 (10th Cir 1997).  The Ninth Circuit reasons that subsections (d)(2) through (d)(4) refer to "employees" and "job applicants," rather than "qualified individuals with a disability," because "protecting only qualified individuals would defeat much of the usefulness of those sections."  *Fredenburg,* 172 F3d at 1182.  EEOC enforcement guidance supports this interpretation.  *Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)* (EEOC Notice 915.002) (EEOC, July 27, 2000)[1] ("This statutory language makes clear that the ADA's restrictions on inquiries and examinations apply to all employees, not just those with disabilities.").  Although not controlling, such agency publications "do constitute a body of

---

[1]  Available at http://www.eeoc.gov/ policy/docs/guidance-inquiries.html (last visited Feb. 15, 2012).

experience and informed judgment to which [courts] . . . may properly resort for guidance."
*Meritor Sav. Bank, FSB v. Vinson*, 477 US 57, 65 (1986).

At least one district court has reached the opposite conclusion and barred a private right of action under 42 USC § 12112(d)(2)(A) to a nondisabled person. *Armstong v. Turner Indus., Ltd.*, 950 F Supp 162, 163 (MD LA 1996), aff'd, 141 F3d 554 (5th Cir 1998). Based on the context and the ADA's legislative history to protect only disabled persons, that court interpreted subsections (d)(2)-(4) as all circumscribed by subsection (d)(1). On appeal, the Fifth Circuit reserved judgment on whether a non-disabled person may sue under subsection (d)(2)-(4), but agreed that in order to bring an ADA claim, a plaintiff must be eligible for ADA relief. 141 F3d at 559. Because the refusal to hire was not caused by disability discrimination, but by falsification of information, it concluded that the plaintiff had no compensable injury under the ADA. *Id* at 559-61. *Accord Fuzy v. S&B Eng. & Constructors, Ltd.*, 332 F3d 301, 303 (5th Cir 2003).

However, the rationale expressed by the majority of circuits interpreting the similar provision of the ADA applies equally to ORS 659A.133. Therefore, following the Ninth Circuit, this court concludes that ORS 659A.133 creates its own private right of action that does not require proof of a disability.

### B. Failure to Maintain Separate File

Old Dominion argues that Tamburino has failed to sufficiently plead that it violated ORS 659A.133(3)(b) by failing to maintain her confidential questionnaire separate from other non-confidential information. First Amended Complaint, ¶ 17(1). In support, it points to a decision by the Ninth Circuit which dismissed the plaintiff's claim under the identical ADA provision, 42 USC § 12112(d)(3)(B), because "the bare allegation that defendants have not

provided, or adequately described, safeguards fails to state a violation of the ADA requirements

as set forth in § 12112(d)(3)(B)[.]"  *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F3d

1260, 1274 (9th Cir 1998).

Here, in contrast, Tamburino does not allege a lack of adequate safeguards.  Instead, she

specifically alleges that Parker was able to review Tamburino's questionnaire because it was not

kept separate from the other files.  First Amended Complaint, ¶ 18.  This is a sufficient factual

allegation that, if true, would constitute a violation under ORS 659A.133(3)(b).[2]

**C.  Utilization of Questionnaire**

ORS 659A.133(3)(b) requires that information obtained in a post-job offer medical

examination must be treated as confidential except in three circumstances.  The second and third

exceptions, allowing disclosures to "first aid and safety personnel" and "[o]fficers and

employees of [BOLI]," are not applicable here.  That leaves only one potential exception,

namely that "[s]upervisors and managers may be informed regarding necessary restrictions on

the work or duties of the employee and necessary accommodations."  ORS 659A.133(3)(b)(A).

Even if this exception is satisfied, the "results of an examination . . . may only be used in the

manner provided for in ORS 659A.112 to 659A.139."  ORS 659A.133(3)(c).

Tamburino alleges that Old Dominion failed to comply with these statutory requirements

because it "utilized the confidential questionnaire for workers' compensation claims

administration," "provided [it] to persons not authorized by law to review them," and "utilized

[it] as a basis for employee discipline."  First Amended Complaint, ¶ 17(2)-(4).  Tamburino does

not contest that both Parker and Stoddard are "managers."  Therefore, her allegation in

---

[2]  Although Tamburino also points to Old Dominion's answer to an interrogatory to support this allegation, such
evidence cannot be considered to resolve motion to dismiss.  The parties' dispute as to how Old Dominion stores its
digital records must be reserved for summary judgment or trial.

paragraph 17(3) that Old Dominion "provided the confidential questionnaires to persons not authorized by law to review them" is not supported by the facts alleged in the First Amended Complaint and fails to state a claim. Instead, she argues that they may be informed only for the purposes expressly authorized by the statute ("necessary restrictions on the work or duties of the employee and necessary accommodations") and not for the unauthorized purposes of workers' compensation claims administration or employee discipline.

Old Dominion responds that Tamburino too narrowly construes the statute. It contends that nothing in the statute expressly prohibits a workers' compensation manager, such as Parker, from reviewing, accessing or using Tamburino's questionnaire to determine her work restrictions upon returning to work after an injury and then informing another manager of false information contained on that questionnaire. As the workers' compensation manager, Parker has a duty under Oregon's workers' compensation law to find light duty work for an injured employee. *See*, *e.g*., ORS 656.268(4)(c) (an injured worker's temporary total disability payments unilaterally terminate if the employee declines modified light duty employment); ORS 659A.043(3)(a)(D) (reinstatement rights terminate upon worker's refusal of an employer's bona fide offer of light duty); ORS 659A.046(3)(a)(d) (reemployment rights terminate upon worker's refusal of an employer's bona fide offer of light duty). In accordance with the findings of a medical provider, an employer must craft an offer of modified light duty that complies with OAR 436-060-0030(5). According to Old Dominion, that duty required Parker to review Tamburino's confidential questionnaire for any "restrictions on [her] work or duties" as allowed under ORS 659A.133(3)(b)(A). Then, in furtherance of another lawful duty owed to her employer to enforce the no-falsification rule, she may disclose any false information learned from that questionnaire to her colleague, Stoddard, for disciplinary purposes.

No Oregon case law or legislative history bears on the construction of ORS 659A.133. However, there is some instructive federal case law regarding the applicability of ADA's equivalent statute, 42 USC § 12112(d)(3), in similar situations.  In *Blanco v. Bath Iron Works Corp.*, 802 F Supp2d 215 (D Me 2011), Blanco was hired after answering a post-job offer questionnaire in which he failed to disclose his attention deficit hyperactivity disorder ("ADHD").  Later he was transferred to a different team with a change in tasks where he experienced difficulty due to his ADHD.  He disclosed his condition to his supervisor, requested reasonable accommodations, and met with an in-house doctor.  The doctor told him she believed he had misrepresented facts when he did not affirmatively disclose his ADHD on his questionnaire and, therefore, would not be able to obtain reasonable accommodations.  After the doctor discussed her concerns with members of management, Blanco was terminated for failing to disclose his ADHD on the questionnaire.  Blanco sued for violation of the ADA confidentiality provision, 42 USC § 12112(d)(3).  The court denied the employer's motion to dismiss for failure to state a claim, stating that "there is no prevarication exception to the ADA's confidentiality mandate."  *Id* at 224.  It acknowledged the persuasive policy arguments in support of the employer, but concluded that "these policy arguments do not trump the statutory language."  *Id* at 225.

In reaching this conclusion, *Blanco* cited an earlier case, *Downs v. Mass. Bay Transp. Auth.*, 13 F Supp2d 130, 141–42 (D Mass 1998).  In *Downs*, the plaintiff falsely answered "no" when asked on a medical history form whether he had "ever received workers' compensation" or "ever had joint pains."  A year and a half after being hired by MBTA, Downs filed a claim for workers' compensation benefits due to a tendon problem in his right elbow.  During the evaluation of that claim, the MBTA workers' compensation claim representative learned of

Downs' false answer on the medical questionnaire and reported it to her MBTA supervisor.  As a

result, Downs was discharged for falsifying information on his employment application.

Granting summary judgment for Downs, the court concluded that MBTA had violated the

ADA's confidentiality provision "by allowing its workers' compensation claims representative

unlimited access to his medical file." *Id* at 141.  The court noted that access alone was not

enough to constitute a violation, but the release of confidential information to the claims

representative did not "fall within any of the permissible uses of this confidential information

under the ADA . . . . [T]he claims representative is neither a supervisor or manager, nor a first

aid or safety person, nor a government investigator.  Moreover, the purpose for which the

information was sought and used does not meet any of the purposes recited by the ADA and

Rehabilitation Act." *Id*, 13 F Supp2d at 141-42.

Parker is neither a doctor with a clear right to obtain access to confidential information,

as in *Blanco,* nor a low level representative who clearly does not have that right, as in *Downs*.

Instead she is a manager who may have access, provided that her purpose for access was

regarding "necessary restrictions on the work or duties of the employee and necessary

accommodations."  However, pursuant to the conclusions reached in both *Blanco* and *Downs*,

Tamburino may state a claim for violation of ORS 659A.133(3)(b)(A) based on Parker informing

Stoddard of the confidential information for disciplinary purposes which is not one of the

purposes recited by either the ADA or the Oregon statute.

Old Dominion attempts to avoid this conclusion by arguing that a falsified questionnaire

rendered Tamburino ineligible employment.  Since this was restriction on her "work or duties,"

Parker was authorized to inform Stoddard of that work restriction.  That is an attempt to put a

round peg into a square hole.  Ineligibility for employment based on a false statement is not

equivalent to "necessary restrictions" or "necessary accommodations" contemplated by ORS 659A.133.  The use of the questionnaire is allowed only under certain limited circumstances to prevent discrimination against applicants with disabilities.  Thus, the reference to work restrictions and accommodations can only be interpreted as those based on physical or mental disabilities, not on some employment policy against falsifying information.

Old Dominion also argues that the statute anticipates the ability of human resources managers to review medical information concerning an employee and confer, citing *Lee v. City of Columbus*, 636 F3d 245 (6th Cir 2011).  In that case, the plaintiffs alleged violations of the Rehabilitation Act (encompassing similar provisions of the ADA) because the city required employees to submit to immediate supervisors a copy of physicians' notes stating the "nature of the illness."  In discussing the confidentiality provisions of medical information, the court noted that "the ADA clearly permits an employer, including by express definition a supervisor (as an 'agent' of the employer), to make inquiries and receive medical information in accordance with § 12112(d)." *Id* at 258.  "Section 12112(3)(B)(i) neither expressly nor implicitly restricts the role of supervisory personnel in receiving and processing an employee's medical information." *Id.*  However, *Lee* addressed physicians' notes for sick leave and not the post-offer questionnaires at issue here.  Here the issue is whether the information was utilized consistent with the purpose of the statute for determining necessary restrictions or accommodations.  A review for disciplinary purposes is not consistent with that purpose.

Old Dominion also points out that pursuant to ORS 659A.133(3)(c), the results of a post-offer medical examination "may only be used in the manner provided for in ORS 659A.112 to 659A.139." ORS 659A.133(3)(c).  The referenced statutes, ORS 659A.112-.139, are Oregon's disability anti-discrimination statutes.  It argues that an employer does not violate these statutes

by imposing discipline on an employee who violates a work rule by falsifying a post-job offer

medical questionnaire.  This is nothing more than the same policy argument made by the

employer in *Blanco* that protecting falsified questionnaires would only encourage lying on

questionnaires to obtain employment.  As the court explained in *Blanco*, "Congress may or may

not have considered whether to carve out a disclosure exception for instances where the

employer concludes that the employee lied or misrepresented his pre-employment medical or

mental condition.  In any event, there is no such exception in the statute."  *Blanco*, 802 F Supp2d

at 225.  This court agrees.

Thus, Tamburino states a claim that Old Dominion violated ORS 659A.133 because it

"utilized the confidential questionnaires as a basis for employee discipline," as alleged in

paragraph 17(4) in the Third Claim.

The more difficult issue is whether Tamburino can state a claim for violation of

ORS 659A.133 based on Parker's review of the confidential information solely "for workers'

compensation claims administration."  First Amended Complaint, ¶ 17(2).  The statute does not

specifically permit access or review of confidential information for workers' compensation

claims management purposes.  However, Old Dominion argues that such access is authorized as

consistent with federal guidance on the same issue.

The Equal Employment Opportunity Commission ("EEOC"), the federal program that

enforces the ADA, allows use of medical information in workers' compensation administration.

In answering "yes" to the question, "Do the ADA's confidentiality requirements apply to

medical information regarding an applicant's or employee's occupational injury or workers'

compensation claim?," the EEOC explains: "Medical information regarding an applicant's or

employee's occupational injury or workers' compensation claim must be collected and

maintained on separate forms and kept in a separate medical file along with other information required to be kept confidential under the ADA."    EEOC regulations provide two more instances in which disclosure is permitted:  (1) "government officials investigating compliance with the ADA must be given relevant information on request;" and (2) "employers may give information to state workers' compensation offices, state second injury funds, and workers' compensation insurance carriers in accordance with state workers' compensation laws." *EEOC Enforcement Guidance:  Workers' Compensation & ADA*, EEOC Notice 915.002 (July 6, 2000). This suggests that workers' compensation medical files and the post-job offer questionnaire may be maintained in the same confidential file and are accessible by workers' compensation administrators.

Tamburino responds that the EEOC guidance is not applicable, given that BOLI applies a different standard to medical examinations in connection with an offer of employment.  That standard, OAR 839-006-0242, parrots the language of ORS 659A.133(3) and makes no mention of providing confidential information to the workers' compensation offices.  As Tamburino points out, the EEOC provides guidance for all 50 states which have differing workers' compensation laws.  In some states, unlike Oregon, false information on medical questionnaires may be used to deny workers' compensation benefits.  In such states, it would be appropriate to disclose confidential information to workers' compensation persons.  However, disclosure serves no such purpose in Oregon.

This court does not agree with Tamburino that post-job offer medical questionnaires are always off-limits for workers' compensation purposes.  The statute only refers to "supervisors and managers" obtaining the confidential information without defining their duties.  Parker is a manager.  As a manager, she may obtain confidential information on the questionnaires as long

as her purpose is to determine "necessary restrictions on the work or duties of the employees and

necessary accommodations." ORS 659A.133(3)(b)(A). Tamburino argues that Parker had no

such reason since the information on her questionnaire was dated two years before she filed her

workers' compensation claim and any light duty offer must be premised on current restrictions

from a medical provider. If Tamburino is correct, then Parker did not access her questionnaire

for the purpose authorized by ORS 659A.133(3)(b)(A). To that extent, Tamburino states a claim

against Old Dominion.

      However, Tamburino alleges in paragraph 17(2) that Old Dominion violated

ORS 659A.133 based on its practice and policy of utilizing the questionnaires "for workers'

compensation claims administration." That allegation is too broad and does not state a claim

since it is conceivable that workers' compensation claims administration may, in some

circumstances, overlap with a need to determine work restrictions and reasonable

accommodations for an injured employee. If a review for the purpose of managing a workers'

compensation claim includes a legitimate need to determine light duty restrictions, then Parker's

review would be authorized under the statute. Thus, Tamburino's allegation for violating

ORS 659A.133 must be premised only on Parker's review of the confidential information for an

unauthorized purpose.

      Old Dominion also argues that Tamburino fails to state a claim because the information

disclosed cannot be considered "medical" under Oregon law. As defined in OAR 839-006-

0205(7), "[m]edical . . . means any information, whether oral, written or electronic that: (a) Is

created or received by an employer; and (b) Relates to the past, present, or future physical or

mental health status or condition of an individual." Here, Parker disclosed Tamburino's

omissions concerning, not the existence of, "medical" information.  The court in *Blanco*,

however, concluded that the ADA:

> does not differentiate between accurate and inaccurate medical
> information. 42 U.S.C. § 12112(d)(3)(B) ( "information obtained
> regarding the medical condition or history of an applicant").  So long as
> the information relates to "the medical condition or history of the
> applicant," it is statutorily protected.  The Court also rejects the
> Defendants' earnestly pressed point that the confidentiality provision of
> the ADA does not apply to an applicant's negative as opposed to positive
> questionnaire responses. Again, the statute makes no such distinction.

802 F Supp2d at 224.

Moreover,

> It would be exceedingly odd for the law to distinguish between affirmative
> and negative responses in a medical questionnaire. It is typical for
> physicians to take a complete medical history, confirming what medical
> conditions the patient has and has not had, and the cumulative
> information—both affirmative and negative—is essential for the
> differential diagnosis approach to medicine.

*Id*, n2.

This court agrees with that analysis and thus concludes that "information obtained

regarding the medical condition or history of the applicant" in ORS 659A.133(3)(b) includes an

omission of or failure to disclose an applicant's medical condition or history.

 ///

///

///

///

///

///

///

## <u>ORDER</u>

For the reasons stated above, defendants' Motion to Dismiss Plaintiff's Third Claim for Relief (docket # 22) is GRANTED in part as to defendant providing the confidential information "for workers' compensation claims administration" and "to persons not authorized by law to review them" (as alleged in paragraphs 17(2) and 17(3) of the First Amended Complaint) and is otherwise DENIED.

DATED February 16, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge